The defendant, Bianchi, obtained a judgment for $2,200 against the complainant in the Essex county court of common pleas, which represented a balance claimed to be due him on a counsel fee, under an express contract, which was denied by complainant.
A bill was filed in this court to restrain the sheriff from collecting the judgment. Application was made for a preliminary restraint and a motion was made to strike out the bill. The matters were heard before Vice-Chancellor Berry, who continued the restraint until final hearing and denied the motion to strike out the bill.
The learned vice-chancellor says in his opinion, reported in100 N.J. Eq. 238: "Agreements between attorney and client because of the confidential relation are always subject to the scrutiny of a court of equity. * * * An attorney-at-law is aquasi-public officer. He is, in fact, an officer of the court and a part of the machinery of the law, and as such is charged with the duty of assisting in its administration. Like Caesar's wife he should be above suspicion. Too often the accusing finger is pointed at members of the bar without just cause. Because of these facts, and in view of the legal profession as a class, both courts and lawyers should welcome an inquiry into the fairness of transactions between attorney and client and courts should never hesitate to condemn where the conduct of the attorney has been unconscionable. In no other way can the high reputation of the legal profession, of which its members are justly proud, be maintained." *Page 450 
The right to consider the reasonableness of this fee is therefore res adjudicata, as far as this court is concerned.
The defendant contends that it has not been established that any fraud was practiced by the attorney upon the client. This, it seems to me, is not the ground upon which our courts have considered and decided such cases. It is not necessary to show actual fraud. On the broad ground of public policy, the court, because of the fiduciary relation existing between attorney and client, will consider the reasonableness of the fee and the circumstances surrounding the making of the agreement regarding it; and the burden of proof is on the attorney to show the absolute reasonableness of the charge.
In Dunn v. Dunn, 42 N.J. Eq. 431 (at p. 437), the court says: "In Condit v. Blackwell, 7 C.E. Gr. 481, 485, `this fiduciary relation then existing between these parties, the validity of this transaction must be determined by rules of law which are not applicable to ordinary cases. The confidence which the relation of attorney and client begets between the parties and the influence which the attorney thereby acquires, has led to a very close scrutiny of all transactions between them and the law then often interposes to set aside contracts, which between other parties would be subject to no exception. In such case, the burden of establishing the perfect fairness, adequacy and equity of the negotiation is thrown upon the attorney and in the absence of proof, courts of equity treat the case as one of constructive fraud.'
"The transaction must be characterized by the utmost good faith. There must be no misrepresentation and an entire absence of concealment or suppression of any fact within the knowledge of the agent which might influence the principal and the burden of establishing the perfect fairness of the contract is on the agent.
"As I have said above, it is not on the ground of actual fraud that courts interfere, but merely because of the fiduciary relation that is shown to have existed and it not being made to appear that the transaction, whether a gift or contract, was perfectly fair and just. Weeks, in his work on Attorney-at-Law, says: *Page 451 
"`The rule is on the ground of public policy, not a fraud, and prevails though the attorney may be innocent of any intention to deceive and act in good faith.'
"Such is the rule in these cases, than which no principle is more universally approved. I must follow it. I think that an application of the undisputed facts to this text sustains the complainant's bill. Mr. Holt in his answer says that the transaction was fair, just, honorable and the like. The above-stated rule of law admits that all this may be, and yet the party asking relief at the hands of a court of equity obtains it, a transaction that would not be questioned, in which one of the parties is not a solicitor is often set aside when one of them is such solicitor."
In Kelly v. Schwinghammer, 78 N.J. Eq. 437, Vice-Chancellor Leaming, in considering whether actual fraud must be shown, says: "In this court it has been expressly determined that where, pending the relation of attorney and client, a bond or other security is given by the client to his attorney, as compensation for his services, the transaction will be regarded as constructively fraudulent, in consequence of the confidential relation subsisting, and the means of undue influence which the attorney may exert over his client. In such case the burden is thrown on the attorney of showing its fairness, adequacy and propriety."
Chief-Justice Beasley, in Schamp v. Schenck,40 N.J. Law 195 (at p. 200), where a contract for fees was being considered, said: "Such contracts will be inspected with jealous vigilance by the courts, on account of the delicacy of the relationship of the parties to them; and the most transparent candor and good faith is required on the part of the attorney in these dealings with his client, and on such occasions a court of equity is ever on the alert."
In Lynde v. Lynde, 64 N.J. Eq. 736, the court says: "The burden would rest upon the attorney to show that the bargain was a fair one for the client."
In Crocheron v. Savage, 75 N.J. Eq. 589, it is held: "It is not necessary to find that the attorney was guilty of intentional wrong-doing. The reason that he did not disclose the *Page 452 
material facts upon which we have commented is not important. The fact that he did not disclose them is sufficient. The law looks on transactions of this kind between an attorney and his client with suspicion and will not permit a conveyance to the attorney to stand unless the attorney demonstrates the entire good faith of the transaction. It requires him to be absolutely frank and open with his client to disclose every fact of which he had knowledge as well as any professional opinion he may have formed which could in any way affect the client in determining whether or not to make the conveyance."
Complainant was indicted on two counts — one for arson and one for burning with intent to defraud insurance companies. Bianchi says he told complainant that the charges were serious and that he would defend him for the sum of $2,500. At the trial, the arson charge was dismissed on the ground that the building was uninhabited. The jury disagreed as to the other charge. It also appears that in addition an associated counsel was employed, who was to receive $500. It is contended that complainant agreed to all this. Perhaps this is so, as complainant felt himself to be in a serious predicament and might have been willing to promise anything to escape conviction. But in Porter v. Bergen,54 N.J. Eq. 405, the court of errors and appeals said: "Even if it be conceded that the complainant agreed to the charge, yet a court of equity would not sanction it except upon proof of its perfect fairness."
After the first trial Bianchi was discharged and a second trial was had, at which Wilbur A. Mott represented complainant. Mr. Mott, moreover, has an experience of twenty years in criminal matters, and has been assistant prosecutor and prosecutor of the pleas. He was paid $750 for his services and testified that an amount not to exceed $1,000 would be reasonable for all services. Victor D'Aloia, who tried the case for the state, testified that the defense interposed was a simple and ordinary one and that $1,000 would be sufficient. Andrew Van Blarcom, a former assistant prosecutor, agreed substantially with these figures. *Page 453 
There was testimony, of course, that Bianchi's charge was reasonable. I believe, however, that the testimony of the witnesses I have mentioned, two of them engaged in the actual trial of this very case, is entitled to the greatest weight. While I concede that "the laborer is worthy of his hire," I think it is the duty of this court to see that attorneys take from their clients only what their services are fairly and reasonably worth. I think, considering the character of the services and the testimony as to them, that $2,500, plus $500 for an assistant, is entirely too high.
I think that Mr. Bianchi should receive $1,200, less $300 already paid, with no allowance for his associate. If he declines to accept this, I will advise a decree restraining the sheriff from proceeding to collect the judgment.